[No. F053785. Fifth Dist. Mar. 6, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE FUENTES, Defendant and Appellant.

## COUNSEL

Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WISEMAN, Acting P. J.**—In connection with two drive-by shootings against rival gang members, defendant Rene Fuentes was convicted of one first degree murder, three attempted murders, and related charges. His prison sentence includes a life term without the possibility of parole. On appeal, he claims the court gave several incorrect jury instructions. He also makes two constitutional arguments claiming his sentence is erroneous. He acknowledges that the latter arguments are precluded by controlling California authority and asserts them now to preserve them for later review.

We hold in the published portion of our opinion that there is no conflict between Judicial Council of California Criminal Jury Instructions (CALCRIM) pattern instructions on motive and the mental-state elements of the substantive offense of criminal-street-gang participation or the sentence-enhancement and special circumstance provisions related to criminal street gangs.

The judgment is affirmed.

### *FACTUAL AND PROCEDURAL HISTORIES*

Fuentes, who was 18 years old at the time of the shootings, was known to the Bakersfield police as a member of Varrio Rexland Park (VRP), a Sureño criminal street gang he joined when he was 14. He had the letters "VRP" tattooed across his abdomen, the number 13 on a finger, and three dots near his left eye. The number 13 referred to the 13th letter of the alphabet, M, which stands for Mexican Mafia, the prison gang organization under which Sureño gangs operate. The three dots were also a Sureño symbol. Fuentes claimed VRP membership when he was arrested for the current offenses and during other encounters with the police.

The victims of the shootings were Margarito Perez, Jaime Calderon, Jose Guzman, and the deceased, Jesus Arredondo. Margarito Perez was a member of Cycos 13, a gang based in Los Angeles with about 20 members in and around Bakersfield. Though both are Sureño gangs, VRP and Cycos 13 are rivals. Perez lived with his mother in territory claimed by VRP, two blocks away from Fuentes's house. Perez knew Fuentes from the neighborhood. Calderon was Perez's half brother. Guzman and Arredondo were friends of Perez.

Episodes of gang-related tension involving Fuentes and some of the victims took place prior to the shootings. Someone fired shots at Guzman's house. Guzman fought with a VRP member known as Silent; Silent pulled a

knife. Fuentes came to Guzman's house to say Guzman should get out of the neighborhood. Guzman went to see Fuentes to say he did not want trouble; he believed Fuentes gave his word to cease hostilities, but the hostilities continued. A group of VRP members confronted Calderon, thinking he was Perez; one of the members pulled a gun. Someone painted Cycos 13 graffiti on the sidewalk in front of Fuentes's house. Someone else crossed it out.

The first shooting took place on June 14, 2006. Perez was in his front yard with his 18-month-old nephew. A brown Mitsubishi Galant drove by. Fuentes, wearing a bandanna and a blue Kansas City Royals cap (bearing the legend K.C.) to signify his membership in a Kern County Sureño gang, fired a gun from the front passenger seat. Calderon's car, parked in front of the house, was hit by a bullet. Perez grabbed the child and ran inside.

The second shooting happened on June 24, 2006, in the parking lot of a shopping center at the corner of Ming Avenue and Stine Road. Perez, Calderon, Guzman, and Arredondo drove there together after dark. They got out and watched cars drive around the parking lot. They brought beer to drink and hoped to meet girls.

At about the same time, Fuentes arrived at the parking lot as a passenger in a green Lexus belonging to the parents of Fabian Lopez, a member of a Sureño gang called Bakers 13. Fuentes, Lopez, and Fuentes's cousin Silviero, a VRP member known as Gumby, were in the car. Gumby was driving. As they drove around the parking lot, Fuentes saw Perez's group and became agitated. "[T]here them fools are," he said. "[W]here at," Gumby replied. Lopez said, "[L]et's take off." As Gumby steered the car out of the parking lot onto Ming Avenue, they again passed Perez's group. Lopez then heard shots coming from the backseat, behind him. Only Fuentes was sitting in the backseat.

Before the shots were fired, when the Lexus first passed Perez's group, Guzman saw Fuentes's face in the rear passenger-side window. Fuentes stared at Guzman with an angry look. Guzman expected trouble and pointed the car out to Perez. Subsequently, Perez heard the shots and turned to see Arredondo on the ground bleeding. Guzman was also hit. Perez drew a gun from his waistband, ran into Ming Avenue, and fired at the departing car.

Arredondo was shot once in the back. The bullet fractured two vertebrae, lacerated the aorta, pierced several loops of the small intestine, and exited his abdomen. He died that night at a hospital. Guzman was shot once through the left shoulder. A second bullet grazed his right cheek.

The district attorney filed a nine-count information. Counts one through five and count nine related to the shooting on June 24, 2006. Count one

alleged willful, deliberate, and premeditated murder of Arredondo. (Pen. Code, § 187.)[1] Counts two, three, and four alleged attempted murder of Guzman, Perez, and Calderon. (§§ 187, 664.) Count five alleged firing a gun from a car at persons outside the car. (§ 12034, subd. (c).) Count nine alleged that the June 24 shooting constituted participation in a criminal street gang within the meaning of section 186.22, subdivision (a). Counts one through five each included four enhancement allegations (for a total of 20 of these allegations) stating that Fuentes personally and intentionally fired a gun, causing great bodily injury or death. (§ 12022.53, subd. (d).) Counts one through five also each included enhancement allegations stating that Fuentes committed the crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) Counts one through four and count nine included enhancement allegations that Fuentes personally used a gun. (§ 12022.5, subd. (a).) (With respect to counts one through four, these allegations were later withdrawn.) Count one included two enhancement allegations that carried a term of life without the possibility of parole: that the murder of Arredondo was intentional and was done by means of firing a gun from a car intentionally at a person outside the car with intent to kill (§ 190.2, subd. (a)(21)); and that the murder was intentional, was done while Fuentes was an active participant in a criminal street gang, and was carried out to further the gang's activities (§ 190.2, subd. (a)(22)). Counts two, five, and nine included enhancement allegations that Fuentes personally inflicted great bodily injury on Guzman. (§ 12022.7.)

Counts six, seven, and eight related to the shooting on June 14, 2006. Count six alleged firing a gun at an inhabited house. (§ 246.) Count seven alleged firing a gun from a car at a person outside the car. (§ 12034, subd. (c).) Count eight alleged assault with a semiautomatic firearm. (§ 245, subd. (b).) Each of these counts included an enhancement allegation that Fuentes committed the crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) Count eight included an enhancement allegation that Fuentes personally used a gun. (§ 12022.5, subd. (a).)

At trial, the key prosecution testimony came from Fuentes's accomplice Fabian Lopez, a passenger in the Lexus, who received reduced charges in exchange for his testimony and his guilty plea. Lopez identified Fuentes as the shooter in the drive-by on June 24, 2006. Perez, though at first disclaiming any knowledge, testified after his recorded police statement was played for the jury that Fuentes was the shooter in the June 14, 2006, driveby. Under further questioning, Perez equivocated about how sure he was in his identification.

Fuentes testified in his own defense. He denied participating in either shooting. He said he was at his father's and his girlfriend's houses at the

---

[1] Subsequent statutory references are to the Penal Code.

relevant times on June 14 and 24, 2006. Defense counsel focused in his closing argument on a variety of conflicts in the evidence, including Perez's equivocations and some statements that there were more than three people in the Lexus. Counsel also discussed a shell casing that did not come from either of the two guns involved, and cell phone records suggesting Fuentes and Lopez were in separate locations at a time close to the time of the second shooting, when the prosecution's theory placed them in the Lexus together.

The jury found Fuentes guilty as charged. The court imposed sentence as follows: for count one, murder as enhanced, life in prison without the possibility of parole, plus a consecutive enhancement pursuant to section 12022.53, subdivision (d), of 25 years to life; for count two, attempted murder, a consecutive upper term of nine years, a consecutive enhancement pursuant to section 186.22, subdivision (b)(1), of 10 years, and a consecutive enhancement pursuant to section 12022.53, subdivision (d), of 25 years to life; for counts three and four, attempted murder, consecutive terms of two years four months each, equal to one-third of the middle term, plus consecutive enhancements of three years four months each pursuant to section 186.22, subdivision (b)(1), plus 25 years to life each pursuant to section 12022.53, subdivision (d); and for count six, shooting at an inhabited dwelling as enhanced, 15 years to life. Sentences for counts five, seven, eight, and nine were stayed pursuant to section 654. The total sentence was life without parole plus 115 years to life plus 30 years four months.

## DISCUSSION

■ Fuentes's first three arguments concern allegedly erroneous jury instructions. A trial court in a criminal case is required—with or without a request—to give correct jury instructions on the general principles of law relevant to issues raised by the evidence. (*People v. Michaels* (2002) 28 Cal.4th 486, 529–530 [122 Cal.Rptr.2d 285, 49 P.3d 1032].) The court has no duty to give an instruction if it is repetitious of another instruction the court gives. (*People v. Turner* (1994) 8 Cal.4th 137, 203 [32 Cal.Rptr.2d 762, 878 P.2d 521], overruled on other grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5 [15 Cal.Rptr.3d 743, 93 P.3d 344].) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 [74 Cal.Rptr.2d 212, 954 P.2d 475].) Instructional error warrants reversal only if there is a reasonable probability that the defendant would have obtained a more favorable outcome without the error. (*People v. Breverman* (1998) 19 Cal.4th 142, 178 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) An appellate court can address an incorrect instruction to which no objection was made at trial if the instruction impaired the defendant's substantial rights.

(§ 1259.) Although Fuentes did not object to the instructions at trial, we will address the merits of each of the instructional issues he now raises.

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Motive and criminal street gang participation*

In accordance with CALCRIM No. 370, the court instructed the jury as follows regarding motive: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may however consider whether the defendant had a motive. Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

Fuentes argues that this instruction conflicted with the instructions for the substantive offense of criminal street gang participation and the sentence-enhancement and special circumstance provisions related to criminal street gangs and lessened the prosecution's burden of proof on those issues. The instruction for the substantive offense (§ 186.22, subd. (a)) stated: "To prove that the defendant is guilty of this crime, the People must prove that, one, the [d]efendant actively participated in a criminal street gang; two, when the defendant participated in the gang he knew that members of the gang engaged in or have engaged in a pattern of criminal gang activity; and, third, the defendant willfully assisted[,] further[ed or] promoted felonious criminal conduct by members of the gang." The instruction for the section 190.2, subdivision (a)(22), special circumstance required a finding that "the murder was carried out to further the activity of the criminal street gang." The instruction for the section 186.22, subdivision (b), enhancement required a finding that "the defendant intended to assist, further or promote . . . criminal conduct by gang members." Fuentes argues that, although each of these instructions required a finding that he had an intent to further gang activity, the motive instruction contradicted this, telling the jury it did not have to make that finding. We disagree.

■ An intent to further criminal gang activity is no more a "motive" in legal terms than is any other specific intent. We do not call a premeditated murderer's intent to kill a "motive," though his action is motivated by a desire to cause the victim's death. Combined, the instructions here told the jury the prosecution must prove that Fuentes intended to further gang activity

*See footnote, *ante,* page 1133.

but need not show what motivated his wish to do so. This was not ambiguous and there is no reason to think the jury could not understand it. Fuentes claims the intent to further criminal gang activity should be deemed a motive, but he cites no authority for this position. There was no error.

If Fuentes's argument has a superficial attractiveness, it is because of the commonsense concept of a motive. Any reason for doing something can rightly be called a motive in common language, including—but not limited to—reasons that stand behind other reasons. For example, we could say that when A shot B, A was motivated by a wish to kill B, which in turn was motivated by a desire to receive an inheritance, which in turn was motivated by a plan to pay off a debt, which in turn was motivated by a plan to avoid the wrath of a creditor. That is why there is some plausibility in saying the intent to further gang activity is a motive for committing a murder: A wish to kill the victim was a reason for the shooting, and a wish to further gang activity stood behind that reason. The jury instructions given here, however, were well adapted to cope with the situation. By listing the various "intents" the prosecution was required to prove (the intent to kill, the intent to further gang activity), while also saying the prosecution did not have to prove a motive, the instructions told the jury where to cut off the chain of reasons. This was done without saying anything that would confuse a reasonable juror.

*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1126–1127 [38 Cal.Rptr.2d 335], on which Fuentes relies, does not conflict with what we have said. *Maurer* held that the standard motive instruction was erroneous when given in conjunction with an instruction on section 647.6, which prescribes punishment for "[e]very person who, motivated by an unnatural or abnormal sexual interest in children, engages in conduct with an adult whom he or she believes to be a child" where the conduct would be an offense if the other person really were a child. Since this offense includes a "motivation" as one of its elements, a jury naturally would be confused by an instruction saying the prosecution need not prove the defendant's motive. Due to this peculiarity in the definition of the offense (the *Maurer* court called the section "a strange beast" (*People v. Maurer, supra*, 32 Cal.App.4th at p. 1126)), the combination of instructions could not successfully tell the jury where to cut off the chain of reasons for the defendant's action which the prosecution had to prove. If section 647.6 referred to, say, persons acting "with an intent to gratify an unnatural or abnormal sexual interest in children" instead of a motivation, the standard motive instruction would have been no more problematic than it is here.

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## *DISPOSITION*

The judgment is affirmed.

Dawson, J., and Kane, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 2009, S172066.

---

*See footnote, *ante*, page 1133.