Filed 1/20/21  P. v. Casimiro CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>LORENZO CASIMIRO,<br><br>　　Defendant and Appellant. | 2d Crim. No. B300831<br>(Super. Ct. No. BA466536)<br>(Los Angeles County) |

　　A jury found Lorenzo Casimiro guilty of 11 counts of lewd acts on a child (Pen. Code, § 288, subd. (a)); two counts of sexual intercourse or sodomy on a child (§ 288.7, subd. (a)); two counts of sexual penetration on a child (*id.*, subd. (b)); and one count of possession of child pornography (§ 311.11, subd. (a)).  The jury also found as to counts 1 through 4 and 8 through 13, Casimiro committed the offenses against more than one victim.  (§ 667.61, subds. (c) & (e)(4).)  The trial court chose consecutive sentences for an aggregate term of 330 years to life.

　　At sentencing the trial court made negative comments about Casimiro's exercise of his right to trial, rather than accept

a plea offer.  We remand for resentencing.  In all other respects, we affirm.

## FACTS

Casimiro and his family shared a house with two other families.  Between 2016 and 2018, Casimiro molested two girls, J.H. and L.U., one from each of the other two families living in the house.

### *J.H.*

J.H. was born in November 2009.  The first incident occurred when J.H. was eight or nine years old.  Casimiro was in one of the house's closets with his daughter, E.  E. came out of the closet and told J.H. it was her turn.  J.H. entered the closet with Casimiro inside.  He removed her pants and underwear.  He told her to sit down and spread her legs.  He photographed her vagina with his cell phone and touched her vagina with two fingers.  He told her not to tell anyone.

On another occasion, J.H. was using the bathroom.  Casimiro forced his way in.  Her underwear was down and he touched her vagina.  He left when he heard E.'s voice.

On another occasion, J.H. was on Casimiro's bed watching a movie with other children of the house.  The other children went downstairs, leaving J.H. alone with Casimiro.  He removed her pants and underwear, got on top of her, placed his penis in her vagina and kissed her mouth.

On another occasion, J.H. was in her bedroom watching a movie with her brother.  Casimiro knocked on the door.  J.H.'s brother let him in against her wishes.  Casimiro told her brother to go into the closet.  Casimiro removed J.H.'s clothes, lay on top of her, placed his penis into her vagina, and kissed her mouth.  He left when he heard J.H.'s mother calling.

J.H. testified Casimiro had intercourse with her four times. Four other times he climbed on top of her and kissed her.

*L.U.*

L.U. was born in April 2009. On one occasion, Casimiro told her to go into the closet. He went in with her and closed the door. He told her to pose with her arms on her waist. He took a picture.

On another occasion, he entered the bathroom where L.U. was taking a bath and touched her vagina.

On another occasion, L.U. was on Casimiro's bed watching a movie with other children of the house. He had the children move to other parts of the bed. He grabbed L.U.'s foot and rubbed it against his penis. She was unable to pull away.

On another occasion, when L.U. was wearing a dress, Casimiro grabbed her buttocks.

On another occasion, Casimiro told L.U. to get into his bed. He touched the outside of her vagina.

On at least eight separate occasions, Casimiro touched L.U.'s vagina with his hand while they were in bed under the covers. On at least four of those occasions, he penetrated her vagina with his finger. On at least two occasions, he penetrated her anus with his finger.

*Revelation of Abuse*

In March 2018, J.H. told a school official that Casimiro kissed her and touched her vagina. The school official contacted the authorities.

*Interview with Police*

Casimiro was arrested the same day. He was interviewed the next day in Spanish. Initially he denied any wrongdoing.

3

Then he admitted he engaged in sexual activity with J.H. and L.U.

Casimiro admitted that he inserted the tip of his penis into J.H.'s vagina on two occasions; that he once kissed her on the mouth; that he once grabbed her vagina but did not penetrate it with his finger; and that he took two pictures of her vagina.

Casimiro also admitted he engaged in sexual activity with L.U., but he insisted she instigated it. She placed her foot against his penis and took his hand and placed it on her vagina.

Casimiro expressed remorse and resolved not to do it again. He wrote a letter of apology in Spanish to J.H. and asked her forgiveness. He refused to write a letter to L.U. because she was the one who initiated the sexual activity.

*Cell Phone*

A search of Casimiro's cell phone revealed 24,000 pictures. Among the pictures was one of a young girl's vagina and a picture of a male having sex with a girl who appears to be between 11 and 12 years of age. None of the pictures were of J.H. or L.U.

*SART Exam of J.H. and L.U.*

Nurse Toyetta Beukes conducted a SART exam of J.H. Beukes found a genital tear around J.H.'s clitoris and abrasions to her perineum. Beukes could not say what caused the injuries, but they were consistent with sexual assault.

Beukes also examined L.U. L.U. had petechia, that is, small red dots on the inside of her labia. These are consistent with blunt force trauma.

*Defense*

Casimiro testified in his own defense. He said he is fluent in K'iche. His Spanish-speaking abilities are limited. He did not know he could ask for a K'iche-speaking interpreter.

4

Nevertheless, he admitted he never told the interviewing detectives that he did not understand what they were saying.

DISCUSSION

I

*General Intent Instruction*

Casimiro contends the trial court erred in giving CALCRIM No. 250, the general intent instruction.

The trial court gave CALCRIM No. 1110 on lewd acts with a child, and CALCRIM No. 1128 on sexual penetration of a child. Both instructions told the jurors that in order to convict Casimiro of those crimes, they must find he acted with the intent of arousing sexual desires or gratification.

Casimiro points out that both crimes require specific intent. But the trial court gave CALCRIM No. 250, the general intent instruction, as follows:

"The crimes charged in this case require proof of the union or joint operation of act and wrongful intent. For you to find a person guilty of the crimes, that person must not only commit the prohibited act, but must also act with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act. However, it does not require that he or she intend to break the law. The act required is explained in the instruction for each crime and allegation."

The error is harmless by any standard. No juror who concluded Casimiro did the acts of which he was accused would fail to find he did them for his own sexual gratification. There is simply no other explanation for his actions.

Casimiro's reliance on *People v. Maurer* (1995) 32 Cal.App.4th 1121 is misplaced. In *Maurer*, a jury found the defendant, a teacher, guilty of two counts of misdemeanor child

5

annoyance.  (§ 647.6.)  The trial court instructed the jury both that the acts must be motivated by an unnatural or abnormal sexual interest in the child, and that motive is not an element of the crime and need not be shown.  In concluding the error was prejudicial, the Court of Appeal pointed out the convictions were based on comments of a sexual nature made to the child and to the entire class.  The defendant never touched the child or tried to seduce her.  (*Mauer*, at p. 1131.)

The defendant's actions in *Maurer* were ambiguous enough to require reversal.  But there is no ambiguity here.  Casimiro undressed one victim and took a picture of her vagina, touched the vaginas of both victims multiple times, and sexually penetrated their bodies multiple times.  Only one conclusion can be drawn.

## II

### *Failure to Instruct with CALCRIM No. 301*

Casimiro contends the trial court failed to instruct sua sponte with CALCRIM No. 301 that the testimony of a single witness is sufficient to prove any fact.

Casimiro concedes that the instruction is generally viewed as being favorable to the prosecution who has the burden of proof.  He claims, however, that in this case the failure to give the instruction was prejudicial to his defense.  In his defense he testified that the interview with detectives was conducted in Spanish and that his Spanish-language abilities are limited.  He argues the jury did not know that his testimony alone would be sufficient to establish that his Spanish-language ability was limited.

But Casimiro gave a cogent interview with detectives in Spanish, sat through his preliminary hearing with a Spanish

6

interpreter; and even wrote a letter to J.H. in Spanish. At no time until his trial did he claim he had difficulty with Spanish or ask for a K'iche interpreter. Casimiro's defense is simply not credible. Nothing in CALCRIM No. 301 makes incredible testimony credible.

Moreover, Casimiro's testimony in his defense was most remarkable for what he did not say. He had nothing at all to say about the testimony of his victims.

The failure to give CALCRIM No. 301 is harmless. There is no reasonable probability Casimiro would have obtained a more favorable result had the instruction been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III

### *Motive*

Casimiro contends his convictions under counts 14 and 15 must be reversed because the trial court erred in instructing that the prosecution was not required to prove motive. (CALCRIM No. 370.)

Counts 14 and 15 charged sexual penetration of a child in violation of section 288.7. Casimiro points out that section 288.7, subdivision (b) requires that the sexual penetration be "for the purpose of sexual abuse, arousal or gratification." (§ 289, subd. (k)(1).)

The trial court instructed with CALCRIM No. 370 as follows: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict, you may, however, consider whether the defendant had a motive. Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

7

Casimiro relies on *People v. Maurer, supra*, 32 Cal.App.4th at pages 1126-1127. In *Maurer*, the defendant was convicted under section 647.6. That section requires that the defendant be "motivated by an unnatural or abnormal sexual interest in children." (*Ibid.*) The court held it was error to give CALCRIM No. 370 instructing that the prosecution need not prove motive.

It is obviously confusing to instruct that the prosecution need not prove motive and that the jury must find the defendant was "motivated" by a sexual interest in children. Section 288.7 at issue here uses no such language.

Section 288.7, subdivision (b) is a specific intent crime. (See *People v. Hering* (1999) 20 Cal.4th 440, 446 ["for the purpose of" is language typically denoting specific intent].) *People v. Fuentes* (2009) 171 Cal.App.4th 1133 rejected the argument that specific intent and motive are synonymous. In *Fuentes*, the defendant argued that CALCRIM No. 370 conflicts with the specific intent required for a gang enhancement. The court stated: "An intent to further criminal gang activity is no more a 'motive' in legal terms than is any other specific intent. We do not call a premeditated murderer's intent to kill a 'motive,' though his action is motivated by a desire to cause the victim's death. Combined, the instructions here told the jury the prosecution must prove that the defendant intended to further gang activity but need not show what motivated his wish to do so. This was not ambiguous and there is no reason to think the jury could not understand it. The defendant claims the intent to further criminal gang activity should be deemed a motive, but he cites no authority for this position. There was no error." (*Fuentes*, at pp. 1139-1140.)

8

Moreover, if there was error, it was harmless. As we have previously stated, any juror who found that Casimiro committed the acts alleged would find that he committed these acts with the intent to obtain his own sexual gratification. Whether sexual gratification is denominated intent or motive, the result is the same.

## IV

### *Multiple Convictions on Same Act*

Casimiro contends the trial court erred in failing to instruct sua sponte that the jury cannot convict him of more than one count of a lewd act on a child based on the same act.

The prosecution charged Casimiro with four counts of lewd acts on J.H. in counts 1 through 4. The prosecution also charged Casimiro with seven counts of lewd acts on L.U. in counts 7 through 13. The counts did not specify any particular lewd act.

The trial court gave CALCRIM No. 3500 requiring the jury to "all agree on which act [Casimiro] committed." The trial court also gave CALCRIM No. 3515, which provides, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one."

Casimiro argues that a single course of conduct can lead to multiple convictions. (Citing § 954; *People v. Pearson* (1986) 42 Cal.3d 351, 354.) But the rule refers to convictions on different offenses based on the same act. (*Ibid.* [defendant can be convicted of sodomy with a child and lewd act with a child based on single act of sodomy].) Even without instructions, no reasonable juror would conclude that a single lewd act can result in multiple convictions of section 288, subdivision (a).

9

Here the trial court instructed that each count charged is a separate crime, and that the jury must consider each count separately.  There would be no need to consider each count separately if multiple convictions of lewd act with a child could be based on the same act.

In fact, the record shows the jury did not believe that it could convict Casimiro of multiple counts based on the same act.  The jury sent a note to the judge:  "The jury would like to know if we can confirm whether each of the 16 counts corresponds to a specific incident . . . .  Based on our notes from the trial, we've compiled our own list of incidents . . . .  But can we confirm that our list of incidents corresponds 100% to the 16 counts we're considering?"  The trial court responded, "Each count is associated with an act.  It is up to you to decide which act(s) occurred."

There is no possibility the jury believed it could convict Casimiro on more than one count for the same act.  The jury stated it had compiled a "list of incidents" and the trial court instructed that each count is associated with an act.

V

*Considering Exercise of Right to Jury Trial at Sentencing*

Casimiro contends the trial court denied him due process and the right to a jury trial when it considered the exercise of his right to jury trial at sentencing.

At the sentencing hearing, the trial court stated:  "What is particularly despicable about this defendant, not only what he did to these little girls, he robbed them of their innocence and of their childhood, but he was offered a plea bargain and he didn't accept it.  And I don't know why he didn't accept it because he confessed to the police.  He could have accepted the plea bargain.

10

He could have accepted the sentence that was offered by [the prosecution], but he made these little girls come into the courtroom and be victims all over again by having to testify as to what this defendant did.  Shame on him."

A defendant cannot be penalized for exercising his Fifth Amendment right not to plead guilty and his Sixth Amendment right to a jury trial.  (*United States v. Jackson* (1967) 390 U.S. 570, 581 [20 L.Ed.2d 138, 147].)

The trial court's comments are disturbing.  The court stated what is "particularly despicable" about Casimiro is, not only what he did to his victims, but that he did not accept a plea bargain and he made his victims testify at trial.  It is difficult to view the court's comments, made immediately before sentencing, as having no bearing on the sentence.  It is true that the indeterminate terms imposed on most of Casimiro's convictions were not discretionary.  (§ 667.61.)  But the court had the discretion to impose concurrent or consecutive terms.  (See § 667.6, subds. (d) & (e).)  The court chose consecutive.

In *In re Lewallen* (1979) 23 Cal.3d 274, the defendant was convicted by a jury after rejecting a plea offer.  The trial court made two statements that our Supreme Court concluded demonstrate the sentencing was influenced by improper considerations:  "First, in response to defense counsel's suggestion that placing defendant on informal probation would suffice, the trial judge responded, 'You mean whether or not there's a disposition or not after a jury trial?'  Second, after sentencing the trial judge stated, 'I think I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation.  It

11

is just a waste of everybody's time, and what's he got to lose.  And as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.' " (*Id.* at p. 277.)

Our Supreme Court issued a writ of habeas corpus vacating the judgment and remanding for sentencing.

The trial court's comments here are not much different from those of the trial court in *Lewallen*.  Of course, it is entirely possible that the court's comments had no bearing on its sentencing choices.  But given that Casimiro was sentenced to 330 years to life, it seems prudent to remand for sentencing.  We express no opinion on how the trial court should exercise its sentencing choices.

The sentence is vacated and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

12

Mark S. Arnold, Judge

Superior Court County of Los Angeles

_____

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.