Filed 10/1/15  P. v. Hernandez CA CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THOMAS HERNANDEZ,<br><br>    Defendant and Appellant. | D067440<br><br><br>(Super. Ct. No. SWF1103171) |

APPEAL from a judgment of the Superior Court of Riverside County, Mark A. Mandio, Judge.  Affirmed in part and reversed in part with directions.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Thomas Hernandez was convicted of four counts of child

molestation and sentenced to what is effectively lifetime imprisonment. The four charges arose from defendant's molestation of two different victims (two charges per victim). Because each victim alleged more than two incidents that could support the charges, the trial court gave jurors a standard unanimity instruction, informing them they must either find all of the allegations against defendant true, or they must reach a unanimous agreement regarding which alleged acts supported each count against defendant.

Defendant argues this instruction and others did not adequately inform the jurors that defendant could only be convicted on counts 1 and 2 for assaulting Jane Doe I and on counts 3 and 4 for assaulting Jane Doe II. Defendant claims there is a reasonable likelihood the jury convicted defendant on one or more counts for acts against the wrong victim. Defendant also maintains the court failed to adequately respond to a question from the jury regarding the unanimity instructions by simply referring the jury back to the instructions the court had given.

Defendant also argues that an instruction that motive is not an element of the charged offenses reduced the burden of proof against him because motive is identical to the intent element of the charged offenses.

Lastly, defendant claims fines imposed against him violate the ex post facto provisions of the federal and state Constitutions and are incorrectly calculated. We agree with defendant that one of the fines imposed on defendant does violate the ex post facto clause. However, as the People assert, the trial court also erred in failing to impose other mandatory fines on defendant. Accordingly, we reverse and remand in part, with

2

instructions to recalculate and impose the appropriate fines; in all other respects, we affirm.

## PROCEDURAL OVERVIEW

In early 2012, the Riverside County District Attorney charged defendant with five counts of violating of Penal Code section 288, subdivision (a) in early December, 2012.[1] The first two counts concerned lewd acts committed against Jane Doe I on or about the year 1998. Counts 3 and 4 concerned lewd acts committed against Jane Doe II occurring on or about the years 2000 through 2007. Count 5 charged a lewd act from 2005 committed against Jane Doe III. The court dismissed count 5 on the district attorney's motion. The jury convicted defendant on all four remaining counts in late July 2013. In early September 2013, the court sentenced defendant to 40 years plus 300 years to life.

## FACTUAL OVERVIEW

In 1989, defendant pled guilty to committing four acts of child molestation in violation of section 288, subdivision (a). Defendant remarried in 1996 and moved into a home in Lake Elsinore, California with his wife B. Hernandez (B.H.) sometime in 1998 or 1999.

Jane Doe I (JD1) is B.H.'s niece (defendant's niece by marriage) and was born in 1992. During the 1990's, JD1 lived in Lake Elsinore and frequently visited defendant's residence. The first incident of sexual molestation involving JD1 occurred when she was approximately six years old. Defendant had an inflatable swimming pool that JD1

---

[1] All further references to code sections are to the Penal Code unless otherwise noted.

3

frequently enjoyed.  One day, defendant took JD1 into a backyard shed after she was done swimming.  Even though JD1 was old enough to dry herself off with a towel, defendant insisted he had to dry her off himself and had her disrobe in the shed.  While drying her off with the towel, defendant began rubbing JD1's genitalia.  JD1 tried pushing his hand away, but defendant resumed touching her genitalia.  Defendant rubbed JD1's genital area for approximately one minute before penetrating her vagina with one of his fingers.  JD1 screamed, and defendant left the shed as JD1's older sister came over to see what was happening.  JD1's sister told JD1 not to tell anyone, and JD1 complied by not telling any adults about what happened that day.  This incident was one of three or four virtually identical incidents that occurred over the course of the summer of 1998.

Another incident of sexual molestation occurred during the following school year.  JD1 was asleep on a couch at defendant's home when she was awakened to defendant rubbing her buttocks through her clothing.  JD1 sat up and defendant continued to touch her, putting his hand on her thigh.  Defendant stopped touching JD1 when he heard B.H. entering the room.  Sometime around 1998 or 1999, JD1 was separated from her parents and stopped seeing defendant.

Jane Doe II (JD2) was born in 1995 and was 18 years old at the time of defendant's trial.  She is B.H.'s granddaughter (defendant's step-granddaughter).  JD2 moved from Fresno to Lake Elsinore with her family sometime around the year 2000.  JD2 was approximately five or six years old at that time.

Sometime in 2000 or 2001, JD2 spent the night at defendant's house.  JD2 went to

4

sleep on a couch and awoke to defendant entering the room. JD2 was lying face down on the couch and wearing a shirt and overalls. Defendant undid the straps on JD2's overalls and pulled them and her underwear down, exposing her buttocks. JD2 was frightened and did not understand what was going on or what to do; in response to defendant touching her, every muscle in her body tensed up and she lay motionless on the couch. Defendant touched JD2 with his fingers and then placed his penis on top of her buttocks. After some time passed, defendant removed his penis, patted JD2 on the back and put her clothes back on. JD2 did not tell her mother or anyone else about the molestation because she did not know what happened and did not want to get in trouble.

Another incident occurred when JD2 was in third or fourth grade. JD2 was riding her tricycle outside defendant's home when he picked her up and began repeatedly kissing her on her mouth while she squirmed and tried to push him away. After a few minutes, JD2 managed to get free from defendant and ran into the house. A third incident occurred during a family gathering at defendant's home while JD2 was in fifth or sixth grade. JD2 was alone in defendant's kitchen retrieving something from the refrigerator. Defendant came up behind JD2, put his arms around her, and put his hand down her pants. JD2 felt defendant's hand touch her as he moved up her thigh and towards her genitalia. JD2 moved away from defendant and exited the room. As she left, defendant stated, " 'You know it feels good.' "

JD2 finally disclosed the molestations in 2007, when she was 11 or 12 years old and still in fifth or sixth grade. JD2's parents had gone to a wedding and left JD2 in the

5

care of Suzanne Youngquist (Youngquist), a friend of JD2's mother and B.H.. JD2 was watching television with Youngquist's children when an episode of "America's Most Wanted" about child sex abuse aired. JD2 became visibly upset during the broadcast and disclosed the abuse after some questioning from Youngquist. Youngquist called the police, and JD2 was interviewed by police officers. B.H. did not believe JD2's accusations and was angry with Youngquist for contacting the police. JD2's parents also appeared to disbelieve the allegations. During a meeting between B.H., Youngquist, and D.M. (JD2's mother), D.M. told JD2 she started all this and to "shut the fuck up." The friendship between Youngquist and JD2's family ended over the course of the following days. A police report filed in 2007 stated that JD2's family was uncooperative with the police investigation. No charges were brought against defendant in 2007.

In 2007, JD1 disclosed to a counselor at juvenile hall that defendant had sexually molested her but no action was taken. In 2009, JD1 saw defendant again at Thanksgiving dinner with her mother's side of the family. By that time JD1 had turned 16. At the dinner, defendant hugged JD1, groped her breasts, and attempted to kiss her as she pushed him away. In 2011, JD1 contacted the Riverside County Sheriff's Department about the molestations. JD1 was spurred into action by a telephone conversation she had with a cousin. Because they were hearsay, the specifics of the conversation were not introduced at trial, nevertheless, JD1 testified she realized after the conversation that she "wasn't alone." The Riverside County Sheriff's Department reopened the investigation of defendant and arrested him soon after.

6

At trial, the prosecution presented testimony regarding prior sexual offenses committed by defendant. Jane Doe IV (JD4) was defendant's niece by marriage and lived in the same Los Angeles County neighborhood as defendant during the 1980's. She testified at trial regarding sexual assaults that supported the charges defendant pled guilty to in 1989. JD4 testified that sometime around 1986, she was sleeping face down on defendant's couch, when she awoke to defendant removing her pants and underwear. He then sodomized her by inserting his penis into her anus. In total, defendant sodomized JD4 25 to 30 times between 1986 and 1988 or 1989 when JD4 finally disclosed the sexual abuse to her mother. JD4 was eight or nine years old when defendant pled guilty.

Defendant's daughter, Jane Doe V (JD5) also testified at trial regarding uncharged sexual assaults that occurred in the 1980's while she was living with defendant in Los Angeles County. When JD5 was eight or nine years old, defendant got on top of her and put his penis between her legs, rubbing his penis against her outer genitalia and buttocks until he ejaculated. Defendant abused JD5 in this manner several times between approximately 1980 and 1985. When she was about 11 years old, JD5 disclosed the abuse to her mother, but her mother did not believe her. At age 13 or 14, JD5 and defendant got into a physical altercation, which brought an end to defendant's abuse. JD5 was unaware of the abuse of JD4 or of defendant going to prison for sexual abuse until about 1999 or 2000. JD4 and JD5 did not know JD1, JD2, or Jane Doe III.

The defense called as witnesses B.H. and her daughter D. Interiano, who had lived with her and defendant. B.H. testified she was aware of defendant's criminal history

7

when she married him but believed he was a changed man. B.H. and Interiano contradicted aspects of JD1's story; they stated that defendant was rarely home during the day, that children were never dried off in the shed and that the shed had no room inside it for defendant and JD1 to maneuver around.

B.H. also essentially claimed that Youngquist fabricated the story of JD2 being molested by defendant. She claimed that the real reason JD2 became upset at Youngquist's home was because Youngquist made JD2 eat some food that caused her to become ill. According to B.H., Youngquist's daughter talked to JD2 about how she had been sexually molested and this conversation inspired in JD2 the notion that she too had been molested. B.H. maintained that at a meeting between JD2, B.H., JD2's parents, and Youngquist, Youngquist interrupted JD2 to add details to JD2's story. B.H. also claimed that JD2 denied telling Youngquist that defendant touched her with his penis while Youngquist insisted that JD2 told her that.

Interiano testified that she had been molested as a child, and, based upon that experience, she believed JD2 was lying because JD2's demeanor and behavior did not change in response to the molestations. B.H. acknowledged being aware of allegations raised by JD1, JD2, and Jane Doe III (another granddaughter of B.H. who accused defendant of molesting her, but who did not testify at trial), but insisted all of these claims were fabricated. During closing arguments, defense counsel argued that Youngquist and JD2 likely discovered that defendant was a sex offender on the Megan's Law website and implied that Youngquist, JD1, JD2, JD4, and JD5 had conspired to

8

frame defendant.

ANALYSIS

A. Instructions on Unanimity and Response to Jury Questions

1. *Relevant Facts*

The trial court, without objection from defense counsel, gave the jury adapted versions of CALCRIM instruction Nos. 207 (Proof Need Not Show Actual Date) and 3501 (Unanimity: When Generic Testimony of Offense Presented). The version of CALCRIM No. 207 the trial court provided stated: "It is alleged in Counts 1 and 2 that the crimes against Jane Doe 1 occurred on or about the year 1998 and in Counts 3 and 4 that the crimes against Jane Doe 2 occurred on or about the year 2000 through the year 2007. The People are not required to prove that the crime took place exactly at those times but only that it happened reasonably close to those times." The version of CALCRIM No. 3501 the trial court provided stated: "The defendant is charged with committing a lewd or lascivious act on a child under 14 years of age in Counts 1 and 2 sometime during 1998 and in Counts 3 and 4 sometime in the period between the year 2000 through and including the year 2007. [¶] The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and

9

have proved that the defendant committed at least the number of offenses charged."

During deliberation, the jurors requested "[c]larification of each count [*sic*] as applied to each vict[i]m." After consulting with counsel, the trial court decided the best way to answer the question would be to direct the jurors to read CALCRIM Nos. 207 and 3501. Defense counsel proposed including a sentence in the answer directing the jury to ask a more specific question if the instructions did not satisfactorily answer their question. The trial court decided not to include this language because the court did not believe the jury needed any prompting to ask more questions.

2. *Discussion*

Section 1259 permits review of an instructional error that adversely impacts a defendant's constitutional rights, even if the defendant does not object at trial. (*People v. Smith* (1992) 9 Cal.App.4th 196, 207, fn. 20.) However, no review is required if a jury is unlikely to understand the disputed instruction in the manner defendant claims produced a violation of his substantial rights. (*People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 648.) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.) " ' "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." ' " (*Ibid*.) "We assume the jurors are intelligent persons capable of understanding and correlating all jury instructions given them." (*People v. Milosavljevic*, *supra*, at p. 649.)

10

"The court is under a general obligation to 'clear up any instructional confusion expressed by the jury,' but '[w]here . . . the original instructions are themselves full and complete, the court has discretion . . . to determine what additional explanations are sufficient to satisfy the jury's request for information.' " (*People v. Dykes* (2009) 46 Cal.4th 731, 802.) "When the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal." (*Ibid*.)

The CALCRIM No. 207 instruction plainly states that counts 1 and 2 pertain to crimes committed against JD1 sometime around 1998 and that counts 3 and 4 concern crimes committed against JD2 sometime between 2000 and 2007. The CALCRIM No. 3501 instruction states that counts 1 and 2 pertain to crimes committed in 1998 and counts 3 and 4 pertain to crimes committed between 2000 and 2007. Read together, these instructions leave no ambiguity as to which charges pertain to each victim and what evidence can support each charge.

Defendant nonetheless complains that a statement made by the prosecutor during closing arguments likely created confusion among the jury and contributed to the alleged inadequacy of the instructions. The prosecutor stated: "If they did four counts or more than four counts, but only have four to choose from, we hold them accountable for Count 1, for Count 2, 3 and 4." Arguably, the prosecutor's statement was misleading in that it

11

failed to impart to the jury that to find defendant guilty on all four counts the jury must find not just that four of the alleged acts are true, but it also must find true at least two acts pertaining to each victim.

Nevertheless, "arguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence . . . and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law." (*Boyde v. California* (1990) 494 U.S. 370, 384.) While the prosecutor did a poor job of explaining how the requirement of unanimity would work in the context of multiple victims, the actual instructions themselves are unambiguous.

With respect to the jury's question, we note again that it is presumed juries are intelligent and are capable of reading instructions and correlating different instructions together. (*People v. Milosavljevic*, *supra*, 183 Cal.App.4th at p. 649.) Referring the jury to the combined set of instructions likely resolved any questions regarding which counts pertained to which victim. Thus, the court's response was proper as the instructions themselves fully explained to the jury which counts pertained to which victim.

In sum, in giving CALCRIM instruction Nos. 207 and 3501 the trial court adequately advised the jury on unanimity and did not err in referring the jury to those instructions in response to the jury's question.

12

B. Effect of Instructions on Motivation on Specific Intent Element of Charged Offenses

1. *Relevant Facts*

The trial court also instructed the jury with CALCRIM No. 370: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

The court instructed the jury that to find defendant guilty of any of the four charged counts, they must find: "1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing; [¶] 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; [¶] AND [¶] 3. The child was under the age of 14 years at the time of the act. The touching need not be done in a lewd or sexual manner. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required."

2. *Legal Principles*

Jury instructions violate the due process clause of the Fourteenth Amendment to the United States Constitution if there is a "reasonable likelihood" the jury understood the

13

instructions as lowering the burden of proof for conviction below the reasonable doubt standard. (*Victor v. Nebraska* (1994) 511 U.S. 1, 6.) In general, motive is not an element of a crime. (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1126 (*Maurer*).) However, in *People v Maurer*, the Court of Appeal found that motive was an element of misdemeanor child annoyance in violation of section 647.6. The jury instructions for child annoyance stated that to find the defendant guilty, the jury must find that " '[s]uch acts or conduct were *motivated* by an unnatural or abnormal sexual interest.' " (*Id*. at p. 1125, italics added.) The court found that "motive" and "motivated" meant the same thing and that, therefore, a CALJIC No. 2.51 instruction (equivalent to the CALCRIM No. 370 instruction given in this case) that motive was not an element of the charged offense lowered the burden of proof required for conviction. (*People v. Maurer*, *supra*, at pp. 1126-1127.) Some sentencing enhancements or special circumstances also may have motive as an element. Special circumstance for murder for financial gain requires the jury to find " '[t]he murder was intentional and carried out for financial gain.' " (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1178 ["Carried out 'for' financial gain implies motive"].)

Subsequent cases concerning whether "motive" is synonymous with "intent" in jury instructions have rejected such claims while distinguishing *People v. Maurer*. In response to such an argument, our state high court stated that " 'Motive, intent, and malice--contrary to defendant's assumption--are separate and disparate mental states. The words are not synonyms. Their separate definitions were accurate and appropriate.'

14

[Citation.] Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a required mental state such as intent or malice." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504.) In later cases, the high court has reached the same conclusion where defendants claim that an instruction on motive negated a specific intent requirement for the charged offense. (*People v. Cash* (2002) 28 Cal.4th 703, 739 [motive not element of special circumstance charge of murder with intent to commit robbery]; *People v. Guerra* (2006) 37 Cal.4th 1067, 1135 [motive not element of special circumstance charge of murder with intent to commit rape]; *People v. Wilson* (2008) 43 Cal.4th 1, 21-22.) When "the instructions as a whole [do] not refer to motive and intent interchangeably," there is "no reasonable likelihood that the jury understood those terms to be synonymous." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1135.)

The Court of Appeal rejected a similar argument claiming a CALCRIM No. 370 instruction lowered the burden of proof for both the substantive offense of criminal street gang participation and gang-related sentence enhancements and special circumstances. (*People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1139-1140.) The court in discussing the distinction between intent and motive stated: "[W]e could say that when A shot B, A was motivated by a wish to kill B, which in turn was motivated by a desire to receive an inheritance, which in turn was motivated by a plan to pay off a debt, which in turn was motivated by a plan to avoid the wrath of a creditor. . . . The jury instructions given here, however, were well adapted to cope with the situation. By listing the various 'intents' the prosecution was required to prove (the intent to kill, the intent to further gang activity),

15

while also saying the prosecution did not have to prove a motive, the instructions told the jury where to cut off the chain of reasons.  This was done without saying anything that would confuse a reasonable juror."  (*Id.* at p. 1140.)

3.  *Analysis*

Our state high court has clearly stated that intent and motive are distinct: intent is the mental state required for the crime and motive is the reason a criminal chooses to commit a crime.  This may at times be a fine distinction, but it is a valid distinction nonetheless.  The instruction in this case required the jury to find defendant had the mental state (intent) to sexually arouse or appeal to the sexual desires of himself or the victims to convict; it did not require the jury to find underlying reasons (motive) behind defendant's decision to act in this manner, such as a specific infatuation with the victims or a general predilection towards pedophilia.  This particular specific intent "is no more a 'motive' in legal terms than is any other specific intent.  We do not call a premeditated murderer's intent to kill a 'motive,' though his action is motivated by a desire to cause the victim's death."  (*People v. Fuentes*, *supra*, 171 Cal.App.4th at p. 1139.)

Defendant argues that the specific intent required for conviction of committing lewd and lascivious acts belongs to a special category of offenses that require motive as an element of the crime itself, akin to the murder for financial gain special circumstance. We find this line of argument unconvincing.

The murder for financial gain special circumstance in almost every case will require an evaluation of the murderer's finances and relationship with the victim,

16

circumstances several steps removed from the murder itself and the intent to kill. In contrast, a touching that has been charged as a lewd and lascivious act against a child will typically be a touching that has an apparent sexual connotation that serves as circumstantial evidence of intent (defendant's mental state at the time of the crime) even if an alternative nonsexual explanation for the touching might exist. Evidence of motive (a reason for the sexual touching that goes beyond the mere immediate mental intent necessary for the crime) such as past sexual offenses that demonstrate pedophilic tendencies can bolster the prosecution's case as to intent and may make a difference in the jury's verdict, but motive is not an element of the crime itself.

Furthermore, the instructions given to the jury did not describe the specific intent element as a motive or motivation, nor did they otherwise use intent and motivation interchangeably. Therefore, there is no reasonable likelihood that the jury misapplied the instructions in the manner defendant claims.

C. Imposition of Fines

At sentencing, the trial court imposed the following fines that are challenged by defendant: (1) $1,800 payable to the Division of Adult Institutions pursuant to section 290.3; (2) a restitution fine of $280; and a parole revocation fine of $280, which was stayed by the trial court. Defendant contends that all three fines violate the ex post facto clause of the United States Constitution (art. I, § 9, cl. 3) because the fines were calculated under the statutes as they existed in 2011 when defendant was sentenced and not under the statutes that were in effect when defendant committed the offenses between

17

1998 and 2007. Defendant also contends that the section 290.3 fine was miscalculated as applying to four convictions rather than one.

The People concede that the section 290.3 fine violated the ex post facto clause and should be recalculated but contend the trial court was correct to count each of the four counts as four separate convictions for the purpose of calculating the fine. The People also contend the trial court failed to impose other mandatory fines and fees and request that we remand the case back to the trial court to determine which originally omitted fines and fees apply to defendant and the appropriate amount of those fines and fees.

1. *Fine Imposed under Section 290.3*

In 1995, our state Legislature adopted section 290.3, which imposed an additional fine for persons convicted of sex offenses, including violations of section 288. The fine was set at $200 for the first conviction and $300 for each subsequent conviction. (Stats. 1995, ch. 91, § 121.) Effective September 20, 2006, section 290.3 was amended to increase the fine to $300 for the first conviction and $500 for each subsequent conviction. (Stats. 2006, ch. 337, § 18.) Because section 290.3 fines are punitive, the ex post facto clause applies to fines imposed under the statute. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.)

Defendant was convicted of four violations of section 288 subdivision (a). The $1,800 fine was presumably calculated at $300 for the first offense and $500 each for the other three offenses. The first two counts against defendant are alleged to have occurred

sometime around 1998. Counts 3 and 4 were for acts that occurred between 2000 and 2007. The three acts that could have supported those charges were: the touching of defendant's penis against JD2's buttocks that occurred sometime in 2000 or 2001; the forced kissing of JD2 that occurred sometime between 2001 and 2004; and an incident that occurred between 2005 and 2007 where defendant put his hand down JD2's pants. Because we have two counts and three acts that could each support a count of child molestation, we cannot be certain as to which act pertains to which count. Even if we could be certain as to which act pertains to which count, we cannot be certain beyond a reasonable doubt that any of these acts occurred after the 2006 amendment to section 290.3 became effective in 2007. Therefore, imposing the fine as calculated under the 2006 amendment violates the ex post facto clause.

We now turn to the question of whether the court should have counted one or four convictions for the purpose of calculating the fine for defendant. Defendant argues that for the purposes of section 290.3, a conviction is a judgment and each count is simply part of one judgment/conviction, not a separate conviction in and of itself. In support of this contention, defendant cites the principle that when civil penalties are involved a conviction means not just the verdict by the jury but also the judgment pronounced by the court. (*Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 418 (*Younger*).) Defendant urges that we ignore *People v. O'Neal* (2004) 122 Cal.App.4th 817 (*O'Neal*), which held that each count a defendant is found guilty of is a conviction under section 290.3.

We find this argument unavailing as *Younger* and the line of cases it was citing concerned whether penalties such as disbarment or disqualification from public office could be imposed after the jury had rendered a verdict, but before final judgment was pronounced by the court. (*Younger*, *supra*, 71 Cal.App.3d at pp. 414-422.) These cases do not support defendant's contention that for purposes of assessing a fine under section 290.3, multiple counts would count as one conviction just because they each belong to a single judgment.

As pointed out in *O'Neal*, treating every judgment as a single conviction regardless of how many counts it contains would result in fines being imposed out of proportion to the actual culpability of the offender. (*O'Neal*, *supra*, 122 Cal.App.4th at p. 822.) In a case where a defendant sexually assaults multiple victims, the fine imposed would be contingent upon whether prosecutors initiated a single proceeding against the defendant or instituted separate proceedings for different victims. In the context of a single proceeding, a defendant who is convicted of hundreds of counts of child molestation would be assessed the same punitive fine as someone convicted of just one count. Such results would be bizarre and unjust, and it is exceedingly unlikely the Legislature intended such a result. The interpretation of section 290.3 adopted by the court in *O'Neal* was correct, and defendant is liable for a section 290.3 fine on all four counts.

2. *Restitution and Parole Revocation Fines*

Defendant contends that fines imposed upon him under sections 1202.4 and

20

1202.45 also violate the ex post facto clause. Section 1202.4 mandates that a felon shall pay a restitution fine of no less than $240 and no greater than $10,000. (§ 1202.4, subd. (b)(1).) Section 1202.45 mandates that a parole revocation fine must match the restitution fine. (§ 1202.45.) At the time defendant committed his crimes, the amount of the restitution fine ranged from $200 to $10,000. (*See People v. Souza* (2012) 54 Cal.4th 90, 143 [explaining former § 1202.4].) Defendant impliedly assumes the court intended to impose the minimum fine, but defendant points to nothing in the trial record to support this notion. The fine imposed by the court was within the range authorized by statute at the time defendant committed his crimes and, thus, no violation of the ex post facto clause occurred.

### 3. *Fines and Fees Not Imposed by Trial Court*

The People contend the trial court failed to impose certain mandatory fines and fees and request that we remand this case back to the trial court with an instruction to hold a hearing regarding whether these fines and fees are applicable. Specifically, the People request that the trial court consider imposing criminal justice administration and booking fees pursuant to Government Code sections 29550.1 and 29550.2; a state penalty assessment under Penal Code section 1464, subdivision (a); and a county penalty assessment under Government Code section 76000, subdivision (a). The People also point to some additional punitive fines that might be applicable to defendant that the court failed to rule upon: a 20 percent state surcharge pursuant to Penal Code section 1465.7, subdivision (a), effective September 30, 2002; a 30 percent state courthouse

21

construction penalty, pursuant to Government Code section 70372, effective January 1, 2003; a 10 percent penalty to implement DNA collection pursuant to Government Code section 76104.6, subdivision (a)(1), effective November 3, 2004; and a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services, pursuant to Government Code section 76000.5, subdivision (a)(1), effective January 1, 2007.

Defendant does not respond to this claim in his reply brief, but he does contend that the case should be remanded back to trial court to determine his ability to pay any newly assessed fees. (*People v. McMahan* (1992) 3 Cal.App.4th 740, 749; *People v. Burnett* (2004) 116 Cal.App.4th 257, 261.)

"Section 1202.4, subdivision (a)(2) provides, 'Upon a person being convicted of any crime in the State of California, the court shall order the defendant to pay a fine in the form of a penalty assessment in accordance with Section 1464.' Section 1464, subdivision (a) states in pertinent part, '[T]here shall be levied a state penalty, in an amount equal to ten dollars ($ 10) for every ten dollars ($ 10) or fraction thereof, upon *every fine*, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . .' (Italics added.) Government Code section 76000, subdivision (a) provides for an additional assessment as follows: 'In each county there shall be levied an additional penalty of seven dollars ($ 7) for every ten dollars ($ 10) or fraction thereof which shall be collected together with and in the same manner as the amounts established by Section 1464 of the Penal Code, upon *every fine*, penalty, or forfeiture imposed and

22

collected by the courts for criminal offenses . . . .' " (*People v. Stewart* (2004) 117 Cal.App.4th 907, 910.) "The trial court's failure to impose section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments is a jurisdictional error which can be corrected for the first time on direct appeal." (*Ibid*.) "[T]here is no ability-to-pay proviso for the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments." (*Id.* at p. 911.) Penalty assessments under Penal Code section 1464 do not apply to restitution fines or "[a]ny penalty authorized by Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code." (Pen. Code, § 1464, subd. (a)(3).) Penalty assessments under Government Code section 76000 are not assessed upon any fine imposed under Penal Code section 1464 or restitution fines. (Gov. Code, § 76000, subd. (a)(3).)

Government Code section 29550.1 provides that "[a]ny city, special district, school district, community college district, college, university, or other local arresting agency whose officer or agent arrests a person is entitled to recover any criminal justice administration fee imposed by a county from the arrested person if the person is convicted of any criminal offense related to the arrest." (Gov. Code, § 29550.1.) Government Code section 29550.2 provides that "[a]ny person booked into a county jail pursuant to any arrest by any governmental entity not specified in section 29550 or 29550.1 is subject to a criminal justice administration fee for administration costs incurred in conjunction with the arresting and booking if the person is convicted of any criminal offense relating to the arrest and booking." (See *People v. Rivera* (1998) 65

Cal.App.4th 705, 708.) The retroactive application of these fees does not violate the ex post facto clause because the fine is based upon actual costs incurred by the government in arresting and booking the defendant and thus is not punitive. (See *People v. Batman* (2008) 159 Cal.App.4th 587, 591; *People v. Rivera*, *supra*, at pp. 707-712.) The imposition of fees under Government Code section 29550.2 does require a finding by the trial court that defendant is able to pay. (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1400; Gov. Code, § 29550.2, subd. (a).) As defendant was arrested by the Riverside County Sheriff's Department, Government Code section 29550.2 would apply.

We find the trial court erred in failing to apply mandatory penalty assessments against defendant under Penal Code section 1464 and Government Code section 76000. The court might also have erred in failing to impose a fee pursuant to Government Code section 29550.2, though as the imposition of this fee requires an ability to pay by defendant, the court may have simply exercised its discretion to not impose a fee defendant could not pay. The record is unclear on this matter.

As to the other fines the People request, because these fines are punitive their applicability depends on whether the court can determine beyond a reasonable doubt that any of the offenses defendant was convicted of occurred after the fines became effective. Otherwise, the imposition of these fines violates the ex post facto clause. (See *People v. Voit*, *supra*, 200 Cal.App.4th at p. 1374.) Counts 1 and 2 occurred sometime in 1998, so none of these punitive fines apply to fees collected on these counts. Counts 3 and 4 regarded crimes committed against JD2 between 2000 and 2007. There were three acts

24

committed against JD2 that could support the two charges: one occurred in either 2000 or 2001 when she was five or six years old, and another occurred when JD2 was either in second or third grade (assuming JD2 was in kindergarten or 1st grade in 2000 or 2001, this act could have occurred anywhere between late 2001 and 2004).  The final act occurred sometime when JD2 was in fifth or sixth grade.  JD2 testified that she was in fifth or sixth grade when she revealed the molestations to Youngquist in 2007.  Of the additional punitive fines the People mention, the oldest is a surcharge pursuant to Penal Code section 1465.7, subdivision (a), which became effective September 30, 2002.  At least one, perhaps two, of the acts against JD2 occurred before that date, and we cannot be certain as to which (minimum of) two of the acts the jury found true.  Thus, the fines pursuant to Penal Code section 1465.7, subdivision (a) and Government Code sections 70372, 76000.5 subdivision (a)(1) and 76104.6, subdivision (a)(1) are inapplicable.

Because the trial court did not impose the Penal Code section 1464 and Government Code section 76000 fines, its assessment of defendant's ability to pay the Penal Code section 290.3 fine did not take into account these other mandatory fines.  Since the imposition of these fines increases the total amount of fines defendant is expected to pay over that imposed at trial, on remand the trial court must make a determination as to defendant's ability to pay.  (*People v. Valenzuela*, *supra*, 172 Cal.App.4th at pp. 1249-1250.)  We will also remand to the trial court the question of whether defendant owes any fees to the County of Riverside as pursuant to Government Code section 29550.2.

25

DISPOSITION

The judgment is reversed in part and remanded for the purpose of recalculating and imposing fines under Penal Code sections 290.3 and 1464 and Government Code sections 29550.2 and 76000, consistent with the views we have expressed.  The trial court is directed to correct the abstract of judgment to reflect the recalculated fines and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.