Filed 6/1/22  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE EPIFANIO GARCIA, JR.,<br><br>    Defendant and Appellant. | F078249<br><br>(Kern Super. Ct. No. BF170661A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on May 5, 2022, be modified as follows:

1.  The disposition on page 25 is deleted and the following inserted:

### DISPOSITION

The judgment is reversed with respect to the enhancements and convictions under former section 186.22, subdivisions (a) and (b)(1) and sections 190.2, subdivision (a)(22), 12022.53, subdivision (e), and 12022.7, subdivision (a). The judgment is affirmed in all other respects. The matter is remanded for further proceedings consistent with this opinion.

2.  At the end of the disposition on page 25, add as footnote 7 the following:

[7] We express no opinion on the constitutionality of Assembly Bill 333. This issue was not raised until the People's petition for rehearing, filed after submitting supplemental briefing regarding the applicability of Assembly Bill 333, that did not raise the issue. "[A]s a

court of review, we will not ' "submit to piecemeal argument and will not consider on petition for rehearing questions not previously raised" ' absent extraordinary circumstances, which are not present in the instant case." (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1230, fn. 5; see *Epperson v. Rosemond* (1950) 100 Cal.App.2d 344, 348 [petition for rehearing on questions not previously raised rejected because party may not change the basis of an attack on the judgment through piecemeal argument].)

This modification changes the judgment.

The People's petition for rehearing is hereby denied.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

DETJEN, J.

2.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F078249 |
| Plaintiff and Respondent, | (Super. Ct. No. BF170661A) |
| v. | |
| JOSE EPIFANIO GARCIA, JR., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Robert Gezi, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jose Epifanio Garcia, Jr., appeals his convictions following a jury trial. Garcia was found guilty of first degree murder (Pen. Code, § 187; count 1)[1] of Rodolfo Garcia;[2] assault with a firearm on Yesenia, Joel, and Maria (§ 245, subd. (a)(2); counts 3, 5, 7, respectively); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 8); and participating in a street gang (former § 186.22, subd. (a); count 9). The jury found true enhancements for lying in wait (§ 190.2, subd. (a)(15)), being an active participant in a criminal street gang (§ 190.2, subd. (a)(22)), committing the offense to benefit a criminal street gang (former § 186.22, subd. (b)(1)), discharging a firearm in the commission of the offense (§ 12022.53, subd. (d), and personally using a firearm in a gang offense causing injury or death (§ 12022.53, subd. (e)(1)) as to count 1; benefiting a street gang (former § 186.22, subd. (b)(1)), personally using a firearm (§ 12022.5, subd. (a)), and inflicting great bodily injury (§ 12022.7, subd. (a)) with respect to Joel as to counts 3, 5, 7, and 8; and benefiting a gang (former § 186.22, subd. (b)(1)) as to count 8. Garcia was found not guilty of attempted murder of Yesenia, Joel, and Maria (§§ 664, 187, subd. (a); counts 2, 4, 6, respectively).

For the reasons set forth below, we affirm in part and reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Early in the morning on December 2, 2017, police discovered Andy Medina had been shot and killed. Medina was alleged to be an active member of Lamont 13, a criminal street gang, who went by the nickname "Viper" and was close friends with Garcia.

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    For clarity, we refer to appellant by his last name and Rodolfo Garcia by his first name. Pursuant to California Rules of Court, rule 8.90, we refer to victims by their first names. No disrespect is intended.

[3]    We provide a general review of the facts and relevant evidence in this section. Additional facts relating to any specific argument raised in this appeal will be included in the discussion of that argument.

Later in the day on December 2, 2017, Garcia approached Yesenia and Rodolfo at a grocery store. Rodolfo was wearing red pants and a hat with the letter "A" on it. Garcia initially stood in the entrance to the store, looking around, before asking Rodolfo and Yesenia whether they had seen a little boy. The two responded they had not. As Rodolfo and Yesenia exited the store, Garcia approached again and asked for a lighter and a cigarette. Rodolfo responded that he did not have those items. He and Yesenia then began to walk away. At this point, Garcia stated, "Oh, hold on" and took out a gun. Another man also approached with a gun, and both began shooting at Rodolfo. Rodolfo attempted to flee but was shot dead. These incidents were caught on video surveillance and played to the jury.

The shooting was allegedly a retaliation for the killing of Medina. Rodolfo was alleged to be a former member of Arvina 13, a criminal street gang based in Arvin. Rodolfo had known gang tattoos on his knuckles, hands, chest, and stomach. However, Rodolfo had allegedly left the gang and moved to Lamont in 2014. During the police investigation, a cell phone found with Garcia contained messages from December 2, 2017, stating, "They shot and killed Viper," confirming Garcia was in Lamont near the time of the shooting, asking Garcia if "[he got] the name of … who got hit," and instructing Garcia to destroy the phone.

In addition to the shots that struck and killed Rodolfo, some of the shots fired injured Joel and Maria as they were walking to a nearby restaurant. Maria suffered a cut to her face while Joel was struck more directly causing a broken jaw and additional facial injuries.

The police located six similar nine-millimeter shell casings in front of the nearby restaurant. They also recovered two bullet fragments from the area. Additional bullet fragments, from a different caliber weapon were later found in Rodolfo's body.

When Garcia was eventually arrested, he was found with a semiautomatic firearm. The shell casings located at the scene of the shooting were determined to have been fired

3.

from this gun. However, none of the bullet fragments located at the scene or within Rodolfo's body could be matched to the weapon.

To prove the gang elements of the charges, the prosecution sought to show that Garcia and Medina were both friends and members of the same gang. A photograph found in Garcia's apartment showed Garcia with Medina. Garcia also allegedly told a police officer that he and Medina grew up together and were like family. An officer testified to an incident in 2015 where Garcia was contacted outside Medina's home and identified a photograph of Garcia with Medina where both were making an "L" sign with their left hands.

Prosecutors also attempted to prove Garcia's connection to a gang through several additional avenues. They showed he made a call from prison where he expressed knowledge of gang culture by discussing a gang member named "Shy Boy" that was in protective custody. During that call Garcia stated his housing pod lacked a letter that would reference "LFS," a shorthand reference to Lamont Familia Sureño, which is an alleged subset of Lamont 13. They showed he had been arrested and convicted in 2008 for carrying a concealed weapon, alleging he had stated at the time that his gang moniker was "Joker" and that he had previously been jumped into a Lamont gang. An officer testified Garcia had been seen in 2015 associating with a known Lamont 13 member named Angel Urquidez. Another officer testified that he contacted Garcia during a traffic stop in 2017, saw Garcia had tattoos related to Lamont 13, and found papers and drawings in the trunk of the vehicle Garcia was driving containing gang art and references, including "Lamont, sureño, lobster, Kern lobster, KC" and "93241," all of which referred to Lamont 13. Based on this evidence, the gang expert opined that Garcia was an active member of Lamont 13 at the time of the shooting.

Medina's gang connection was documented in a similar manner. An officer testified to multiple contacts with Medina, confirmed his moniker was "Viper," and confirmed that several of the prior police contacts with Medina related to investigations

of Lamont 13. Pictures from Medina's social media accounts showed gang references, including one for "LFS" or Lamont Familia Sureño. At the time of his death, Medina was considered an active member of Lamont 13.

The majority of the remaining gang evidence came in the form of expert testimony regarding the nature of gangs in Lamont, prior criminal gang activity, and the effects of gang activities on the community. Testimony showed that Lamont 13 is a gang in Lamont with two subsets known as Varrio Chico Lamont and Lamont Familia Sureño. The gang engages in regular illegal activities including murder and illegal possession of firearms. Members of Lamont 13 could belong to either the Varrio Chico Lamont or Lamont Familia Sureño subsets but did not need to be part of either.

Lamont 13's main rival gang is Arvina 13. A Lamont 13 member who saw a rival Arvina 13 member in their territory would be expected to, based on the rules of the gang, confront that person in some manner. Moreover, one would expect that a Lamont 13 member who saw another individual in public in their territory wearing a hat with an "A" and having Arvina Poor Side[4] tattoos would be working to benefit Lamont 13 if they attacked that person in part because such public attacks create fear in the community and allow the gang more freedom to operate.

Evidence also showed that individuals named Ricardo Ramirez, Luis Medina, and Javier Torres were members of Lamont 13 and had previously been convicted of criminal activities occurring on behalf of the gang, including a shooting that occurred in 2016. Another group of individuals, Dennis Ruth, Daniel Catalan, Eddie Catalan, and Roberto Rodriguez were identified as active members of Lamont 13 in 2014 who were convicted of offenses such as attempted manslaughter and assault with a deadly weapon on behalf of the gang, based on a robbery that occurred in 2014. Another individual, Victor Vega,

---

[4] Arvina 13 is also referred to as Arvina Poor Side.

5.

was identified as a Lamont 13 member with ties to the Varrio Chico Lamont subset who had been convicted of attempted murder with a gang enhancement in 2013.

As noted above, Garcia was convicted of all charges brought against him, save for the attempted murder charges, and all enhancements alleged. Garcia was sentenced to life without the possibility of parole, plus 25 years to life, plus 32 years and 8 months. This appeal timely followed.

## DISCUSSION

In his initial briefing, Garcia raises five arguments against various aspects of his conviction, primarily focusing upon the gang enhancements imposed. In the first, Garcia argues the state failed to demonstrate that two predicate offenses were committed by members of the same gang as Garcia. Garcia principally argues that the prosecution failed to tie the La Familia Sureño and Varrio Chico Lamont subsets to Lamont 13. Second, Garcia argues the prosecutor failed to prove beyond a reasonable doubt that Garcia personally caused the death of Rodolfo or the great bodily injury to Joel. Third, Garcia argues his counsel was ineffective in failing to object to certain alleged hearsay evidence supporting the gang expert's opinions. Fourth, Garcia contends a conflict in the jury instructions on motive impermissibly lowered the state's burden of proof with respect to the gang participation charge. Finally, Garcia argues that section 190.2, subdivision (a)(15) is constitutionally infirm. The People concede a portion of Garcia's second argument, acknowledging that the section 12022.7, subdivision (a) enhancement for causing great bodily injury to Joel cannot stand. The People generally oppose Garcia's remaining arguments.

In supplemental briefing submitted in conjunction with this court's grant of Garcia's motion for rehearing, Garcia raises additional gang-related concerns based on recently passed Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which modified the requirements for proving gang enhancements. Garcia asserts these changes apply retroactively and contends that several gang-related charges must be

6.

vacated, specifically, "(1) the count [9] gang participation conviction in violation of [former] section 186.22, subdivision (a)[](2)[,] the true finding on the section 190.2, subdivision (a)(22) gang special circumstance associated with the count [1] murder charge, (3) the true findings on the section 182.22, subdivision (b) gang enhancements in counts [1], [3], [5], [7], and [8] and (4) the gang-related section 12022.53, subdivision (e) firearm enhancement in count [1]."  In response, the People concede retroactivity but argue remand is unnecessary "because the jury would have convicted appellant of the substantive gang charge and found the gang enhancement and special circumstance to be true even under [Assembly Bill] 333's more stringent new requirements."  We ultimately agree with the parties that the modifications are retroactive and with Garcia that remand is necessary on this supplemental issue.  As the People's ability to retry Garcia turns on whether they obtained a proper conviction under the prior law, we begin by reaffirming our analysis of the issues raised in Garcia's initial briefing before turning to the effect of Assembly Bill 333.

### *Alleged* **Prunty**[5] *Error Regarding Evidence of Predicate Crimes*

Garcia challenges the evidence offered to prove the predicate crimes required for conviction under former section 186.22, subdivisions (a) and (b), and section 190.2, subdivision (a)(22).  At the time of Garcia's trial, these gang-related statutes each required proof of two predicate offenses committed either by members of the same gang as the defendant or by members of a gang affiliated with the defendant's gang.  In this case, Garcia argues the prosecutor proved, at best, that he was a member of Lamont Familia Sureño but that the predicate offenses were committed by members of Varrio Chico Lamont or Lamont 13.  Garcia further argues the prosecutor provided no evidence tying these three gangs together.

---

[5]     *People v. Prunty* (2015) 62 Cal.4th 59 (*Prunty*).

*Standard of Review and Applicable Law*

On each relevant count, the jury found Garcia committed the charged offense to further the activities of a street gang under section 190.2, or "for the benefit of, at the direction of, or in association with, Lamont 13, a criminal street gang and with the specific intent to promote, further or assist in criminal conduct by gang members, within the meaning of [former] Penal Code section 186.22(b)(1)," or as a participant in a street gang. A criminal street gang under this statutory scheme is "any 'ongoing organization, association, or group of three or more persons' that shares a common name or common identifying symbol; that has as one of its 'primary activities' the commission of certain enumerated offenses; and 'whose members individually or collectively' have committed or attempted to commit certain predicate offenses." (*Prunty*, *supra*, 62 Cal.4th at p. 67, quoting former § 186.22, subd. (f).)

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.)

*Sufficient Evidence Connects Garcia and Those Connected to the Predicate Offenses to Lamont 13*

In *Prunty*, the California Supreme Court held that "where the prosecution's case positing the existence of a single 'criminal street gang' for purposes of [former] section 186.22[, subdivision ](f) turns on the existence and conduct of one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." (*Prunty*, *supra*, 62 Cal.4th at p. 71.) This showing demands more than a shared ideology or philosophy, a common name, a common enemy, and/or

common symbols.  (*Id*. at pp. 70–72.)  "The prosecution's evidence must permit the jury to infer that the 'gang' that the defendant sought to benefit, and the 'gang' that the prosecution proves to exist, are one and the same."  (*Id*. at p. 75.)  Thus, the prosecutor must adduce evidence that "allow[s] the jury to reasonably infer that the 'criminal street gang' the defendant sought to benefit—or which directed or associated with the defendant—included the 'group' that committed the primary activities and predicate offenses."  (*Id*. at p. 76.)

Garcia argues that the evidence suggesting he was part of an alleged Lamont 13 subset demonstrates the prosecution's theory turned on the existence and conduct of one or more gang subsets.  We do not agree.  Nothing about the existence of a potential gang subset necessitates the prosecution allege that subset is the gang Garcia represents.  Indeed, in *Prunty* itself, despite evidence that multiple Norteño subsets existed in the Sacramento area, the court found the prosecution properly sought to prove that Prunty acted "to benefit the Sacramento-area Norteños" generally, and not any particular subset.  (*Prunty*, *supra*, 62 Cal.4th at p. 82.)  Having made this election, the prosecution then relied on evidence of crimes committed by various gang subsets to prove the predicate offense requirements, without adequately demonstrating those subsets were part of the Sacramento-area Norteño gang.  (*Id*. at pp. 82–83.)

Similar to *Prunty*, here the prosecutor sought to prove Garcia was acting as part of and to benefit the larger Lamont 13 gang, and not any particular subset.  The prosecutor elicited a direct opinion that Garcia was a Lamont 13 member.  Indeed, upon a review of the record, the primary focus of the prosecutor's questioning and the primary opinions and facts elicited focused upon Lamont 13 generally, and not any particular subset.  While subset evidence was elicited and discussed at times, it was not utilized as the basis for any specific gang findings but, much more commonly, as additional background evidence on the nature of the various activities conducted by Lamont 13 members and the associations between them.  Additional evidence in the form of tattoos associated with

9.

Lamont 13, Garcia's statement that he was in a Lamont gang, gang art associated with Lamont 13 generally, and direct contact with alleged Lamont 13 members further supported the prosecutor's position. Upon review of the record, we conclude this evidence was sufficient for a rational trier of fact to conclude Garcia was part of Lamont 13, exclusive of any suggestion he may have also been part of an alleged subset called Lamont Familia Sureño.

Distinguishing this case from *Prunty*, the prosecution further introduced evidence of predicate offenses committed by others classified as Lamont 13 members and supported that assertion with evidence of some combination that the perpetrators self-identified as Lamont 13, possessed Lamont 13 tattoos, or had been previously classified as Lamont 13 members. While Garcia now complains that the prosecution introduced no evidence showing the Lamont Familia Sureño subset committed legally acceptable predicate offenses, his argument again assumes the prosecution must proceed on a theory of related subsets where evidence of subsets exists. Similarly, while Garcia suggests that the relevant gang was Medina's potential subset of Lamont Familia Sureño, he fails to counter the additional evidence showing Medina was a part of Lamont 13 generally.

*Prunty* itself demonstrates there is no obligation to proceed on a subset theory just because subset evidence may exist, as the court noted the expert in that case failed to demonstrate "that the subsets that committed the predicate offenses, or any of their members, self-identified as members of the larger Norteño association that the defendant sought to benefit." (*Prunty*, *supra*, 62 Cal.4th at pp. 82–83.) The unmistakable point of the *Prunty* court's discussion is that the prosecution may proceed on the theory that the relevant gang is Lamont 13 generally, where the evidence supports this conclusion. Consistent with this analysis, where the evidence is sufficient to demonstrate that members of Lamont 13 committed the predicate offenses, we see no reason why the prosecution cannot rely on that evidence to support its theory.

10.

Here, the evidence and opinions concerning the predicate offenses showed that the persons committing them were part of Lamont 13 when they committed their crimes, not some particular subset. Having already demonstrated Garcia was also a member of Lamont 13, this evidence demonstrated there were at least three individuals, associating with the same gang, who had participated in criminal activity in support of that gang. This evidence was sufficient to satisfy the contested portion of the statutory scheme's definition for a criminal street gang. As such, there is no conflict in the evidence presented qualifying as *Prunty* error.

### ***Personal Use of a Firearm and Great Bodily Injury Enhancements***

Garcia's second argument focuses on the enhancement to the murder charge alleging Garcia personally and intentionally discharged a firearm which proximately caused Rodolfo's death and the similar enhancement to the assault charge related to Joel alleging Garcia personally inflicted great bodily injury on Joel. Garcia contends there is insufficient evidence to support these enhancements because no bullet fired from his gun can be connected to the injuries caused. The People concede the great bodily injury enhancement cannot stand but argue that the enhancement related to the murder charge is properly supported.

*Applicable Law*

To prove the great bodily injury enhancement to the assault, the People were required to show Garcia "personally inflict[ed] great bodily injury on" Joel. (§ 12022.7, subd. (a).) As the People acknowledge, this enhancement carries with it a requirement of direct causation, meaning the accused must actually commit the great bodily injury. (See *People v. Ollo* (2021) 11 Cal.5th 682, 688 [noting that in assault context that personal infliction of injury requires the defendant to administer a blow on the victim, not through an intermediary, in a manner that is not minor, trivial, or insubstantial].) Nor can one who aids and abets another in causing the injury be subjected to the enhancement. (*Id*. at p. 692.)

11.

With respect to the discharge of a firearm enhancement to the murder charge, the People were required to show Garcia "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury … or death" to Rodolfo. (§ 12022.53, subd. (d).) "Proximately causing and personally inflicting harm are two different things. The Legislature is aware of the difference. When it wants to require personal infliction, it says so." (*People v. Bland* (2002) 28 Cal.4th 313, 336 (*Bland*).) "A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet." (*Id*. at p. 337.)

*The Evidence Supports the Jury's Finding on Proximate Cause*

As noted, the People concede that the evidence in this case does not demonstrate that Garcia actually caused the injury to Joel. We accept this concession. Only one bullet struck Joel and there is no record evidence tying Garcia to that bullet. Accordingly, the conviction under section 12022.7, subdivision (a) for personally inflicting great bodily injury on Joel cannot stand.

The People contend, however, that a different outcome exists for the personal use of a firearm enhancement attached to Rodolfo's death. Relying on the analysis in *Bland,* the People contend that Garcia did personally discharge a firearm and that his conduct proximately caused great bodily injury or death to Rodolfo. The People rely, in part, on the fact that Rodolfo suffered multiple gunshot wounds, some of which did not result in the recovery of bullet fragments, and the related fact that two gunmen were involved, leaving some wounds unaccounted for. The People further state that, at a minimum, the evidence shows that Garcia and another individual both fired at Rodolfo and that at least three bullets fired by the unknown individual were lethal wounds.

Garcia contends that this line of analysis cannot succeed for two primary reasons. First, although acknowledging that a proximate cause finding could be supported under *Bland*'s logic, Garcia argues the prosecution in this case specifically abandoned such an argument when it agreed the court did not need to instruct the jury on proximate cause

12.

and later argued that at least one of two lethal bullets that were not recovered came from Garcia's gun. Second, relying in part on a claim that the evidence showed the unknown accomplice shot first, Garcia argues there is insufficient evidence the injury or death would have occurred absent Garcia's conduct. We are not convinced by either of Garcia's arguments.

Although *Bland* did not involve a complex factual analysis, its discussion of the meaning of proximate cause with respect to section 12022.53 in the context of multiple unknown shooters provides substantial insight into the resolution of this case. In *Bland*, two shooters had fired at three victims, but the evidence could not tie either shooter to the injuries sustained by the victims. (*Bland*, *supra*, 28 Cal.4th at pp. 318, 334.) The trial court instructed the jury on the section 12022.53 enhancement, and its requirement for a finding of proximate cause, but did not instruct on the meaning of proximate cause. (*Bland*, at p. 334.) Our Supreme Court found that the trial court had a sua sponte duty to instruct on the definition of proximate cause and determined the existing instructions properly stated that definition, but found the failure to instruct was harmless because a jury would necessarily find proximate cause in that case because the meaning of proximate cause is broader, not narrower, than would normally be expected. (*Id*. at pp. 334, 336, 338.)

From the court's discussion of relevant case law, it is apparent that in the event it can be shown multiple individuals fired gunshots at a victim and a gunshot was the actual, direct cause of the victim's injury, but it cannot be determined which individual fired the harm-inflicting bullet, a defendant is criminally liable so long as his or her conduct was a substantial factor contributing to the injury. (*Bland*, *supra*, 28 Cal.4th at pp. 337–338; see *People v. Sanchez* (2001) 26 Cal.4th 834, 845–849 [discussing relevant cases]; see also *People v. Jennings* (2010) 50 Cal.4th 616, 644 ["the 'substantial factor' rule for concurrent causes 'was developed primarily for cases in which application of the

13.

but-for rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result' "].)

Garcia's argument in this case sidesteps the teachings in *Bland* by making two assumptions. The first requires accepting that the lethal shots known to come from the unknown gunman in this case were the focus of the prosecutor's argument and jury's decision to convict on the enhancement. The second is that the only relevant harm that occurred with respect to the enhancement arose from the three known fatal wounds tied to the unknown shooter because that person fired first. Both fall short for the same reasons; the record does not show such a narrow factual premise for conviction and the law does not require such a narrow focus.

On the first assumption, the record shows that the prosecutor specifically argued the relevant injuries were the two "through and through" shots, one of which was to Rodolfo's leg, that were not tied to either shooter. The prosecutor thus argued a theory that wounds caused by an unknown but presumed shooter satisfied the statutory requirements. This theory was then submitted to the jury with a verdict form that required the jury find Garcia proximately caused an injury to convict.[6]

On the second assumption, there is no indication in the law, and Garcia has cited to no case stating, that there can be only one relevant injury or that only a lethal wound will suffice for conviction. As such, the prosecutor was free to argue that injuries that could not be tied to either shooter were sufficient for conviction, and *Bland* confirms that

---

[6]     Notably, the trial court in this case did not instruct on the meaning of proximate cause, as required. In his reply brief, Garcia notes that the prosecutor agreed the instruction was not needed, suggesting this meant only a direct cause argument was being made. The failure to instruct is not raised as an issue in this case, presumedly because Garcia's counsel also agreed to forego the instruction. However, we would find the error harmless for the reasons described in *Bland*. (*Bland*, *supra*, 28 Cal.4th at pp. 334–338.) We further see no basis in the record to conclude the prosecutor was not arguing proximate causation, as his argument relies on convicting one of causing wounds that were not tied to any particular weapon or shooter and the verdict form on the enhancement retained the requirement of proving proximate cause to convict. The prosecutor's inference that Garcia was the shooter does not compel a different result.

14.

the jury could find proximate cause, as called for in the verdict, in such situations. Further, as in *Bland*, it does not matter who fired first. The jury would not likely convict Garcia of proximately causing injuries known to be caused by the unknown accomplice. (*Bland*, *supra*, 28 Cal.4th at p. 338.) Accordingly, we find the evidence sufficient to support the 12022.53, subdivision (d) enhancement to the murder charge.

## *Ineffective Assistance of Counsel*

Third, Garcia raises an ineffective assistance of counsel claim based on counsel's failure to object to allegedly inadmissible hearsay conveyed by the gang expert to prove Garcia committed his crimes for the benefit of his gang. Garcia alleges that the expert improperly relied on community conversations to support his claim that members of the community were less likely to cooperate with police based on crimes committed by Lamont 13 in their neighborhoods. Garcia contends such evidence should have been excluded based on a pretrial in limine ruling that excluded "any case specific out-of-court statements that the gang expert would relate to the jury for the truth as inadmissible hearsay," and thus that any failure to object constitutes ineffective assistance of counsel.

### *Applicable Law*

To establish ineffective assistance of counsel, Garcia must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.)

" 'Tactical errors are generally not deemed reversible; and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory

explanation ….” ’ ” (*People v. Hart* (1999) 20 Cal.4th 546, 623–624.)  “An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel.” (*People v. Kelly* (1992) 1 Cal.4th 495, 540; accord, *People v. Avena* (1996) 13 Cal.4th 394, 421; *People v. Adcox* (1988) 47 Cal.3d 207, 261.)

“The Sixth Amendment to the federal Constitution guarantees a defendant’s right to confront adverse witnesses.  [Citation.]  In addition, the prosecution may not rely on ‘testimonial’ out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.” (*People v. Harris* (2013) 57 Cal.4th 804, 839–840; see *Crawford v. Washington* (2004) 541 U.S. 36, 59.)  Under federal confrontation clause jurisprudence, as interpreted by our California Supreme Court, at least two factors must be considered to determine whether a statement is testimonial.  “First, to be testimonial the statement must be made with some degree of formality or solemnity.  Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution.” (*People v. Dungo* (2012) 55 Cal.4th 608, 619.)

In *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), our Supreme Court considered “the degree to which the *Crawford* rule limits an expert witness from relating case-specific hearsay content in explaining the basis for his opinion.” (*Id*. at p. 670.) *Sanchez* reasserted the historical distinction between case-specific hearsay and the general hearsay relied upon by experts to detail general knowledge in the expert’s field of expertise.  (*Id*. at pp. 675–679.)  In doing so, it clarified that “[i]f an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay.” (*Id*. at p. 684.)

Having established this baseline, the court then considered whether certain types of hearsay evidence in gang cases are testimonial in nature and thus within the purview of *Crawford’s* constitutional restrictions on admissibility.  (*Sanchez*, *supra*, 63 Cal.4th at

16.

p. 687.)  The court detailed its understanding of the present evolution of what constitutes testimonial hearsay, explaining as a precursor, "[t]estimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony.  Nontestimonial statements are those whose primary purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Id.* at p. 689, fn. omitted.)  It then recounted various permutations of the primary purpose test, before applying the overarching doctrine to certain evidence relied upon in reaching the gang conclusions in that matter.  (*Id.* at pp. 689–694.)  In its application, the court found that police reports are generally testimonial in nature, as are field identification cards written during the course of an active investigation.  (*Id.* at pp. 694–697.)  The court concluded the admission of such testimonial hearsay violates the confrontation clause.  (*Id.* at pp. 695–698.)

" ' " 'Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24.'  [Citation.]  We ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error." ' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 873.)  " 'To say that an error did not contribute to the ensuing verdict is … to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'  [Citation.]  Thus, the focus is what the jury actually decided and whether the error might have tainted its decision." (*People v. Neal* (2003) 31 Cal.4th 63, 86.)

*Counsel's Conduct Was Not Deficient*

The People contend, and this court agrees, that the statements made by the gang expert did not rise to the level of case-specific hearsay, but rather consisted of non-case-specific hearsay properly recounted to the jury to disclose part of the basis for the expert's opinion.  The allegedly case-specific hearsay in this instance arose from a series of questions asked to the gang expert.  The expert was first asked how he learned about and worked to understand Lamont 13.  He responded he not only reads police reports and

17.

contact cards but speaks "with other gang experts … other deputies that make frequent contact with gang members. [He] would read police reports, talk to gang members, members of the community, that type of thing." Later, the expert was asked whether he had spoken to members of the public about Lamont 13. After responding yes, the following exchange occurred:

> "Q.    Okay.  And have you spoken to them about the criminal activity of Lamont 13?
>
> "A.    Yes.
>
> "Q.    Have you done so when they are potential witnesses or even victims?
>
> "A.    Yes.
>
> "Q.    Or even in passing where they are not the subject of any type of investigation or questioning or that sort of thing?
>
> "A.    Yes.
>
> "Q.    Like a consensual contact?
>
> "A.    Yes.  [¶] … [¶]
>
> "Q.    Based on your conversations with the general public, are they aware of ongoing criminal conduct of the Lamont 13 criminal street gang?
>
> "A.    Yes."

Although conceding the prosecutor did not elicit any specific statements from members of the public and that the relevant evidence did not go to a direct element of the enhancement, Garcia relies on *Sanchez* and *People v. Williams* (2016) 1 Cal.5th 1166, to contend that the generalized statements about the community's awareness of Lamont 13's criminal conduct constituted case-specific facts that had to be independently proven. We do not agree. Ultimately, the expert's opinion was that the violent crimes committed by the gang caused fear in the community, thus lessening the community's willingness to assist police in solving future crimes. While community knowledge of the gang's

18.

activities is relevant to such an opinion, it is not necessarily a case specific fact in the same way as a statement that community members heard of the current crime or failed to cooperate with police because of the violent nature of the gang in this or any specific instance would be.

Rather, the evidence elicited is more properly seen as background information based on first-hand experiences in the community and falls well within the generalized support permitted for the expert's opinion that violent gang behavior benefits the gang by spreading fear within their territory. As *Sanchez* explains, such general background evidence may be noted for the jury to explain the basis of an expert's opinion. (*Sanchez*, *supra*, 63 Cal.4th at p. 675 ["In addition to matters within their own personal knowledge, experts may relate information acquired through their training and experience, even though that information may have been derived from conversations with others, lectures, study of learned treatises, etc."].) The community discussions here show no indication they were obtained to document past criminal activity and, indeed, at least some of the community knowledge was shared outside of a criminal context and thus was general knowledge acquired through the expert's experience. We likewise see no comparison in the facts to *People v. Williams*, *supra*, 1 Cal.5th 1166, where the properly excluded evidence was purported statements detailing the defendant's mother's alcoholism, offered to support an opinion that the mother was an alcoholic and thus that the defendant was more prone to alcohol abuse. Notably, even there the expert was still permitted to offer an expert opinion based on his diagnosis and general knowledge of a family history of alcoholism. (*Id*. at pp. 1199–1201.) We thus see no error in failing to object to the statements made by the expert in this situation.

## *CALCRIM No. 370*

Fourth, Garcia claims the trial court erred by instructing the jury with CALCRIM No. 370, which informed the jury that the People were not required to prove Garcia had a

motive to commit any of the charged crimes.  He contends this was error because motive is an element of the gang enhancement.

Garcia acknowledges that this court considered and rejected this contention in *People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1139–1140 (*Fuentes*).  He argues this decision should be reconsidered.  We do not agree.

Motive and intent are not synonymous.  (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1322.)  "Motive describes the reason a person chooses to commit a crime.  The reason, however, is different from a required mental state such as intent or malice."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504.)

As we stated in *Fuentes*, a defendant's intent to further criminal gang activity is not a motive any more than any other specific intent; just as intent to kill is not a motive. (*Fuentes*, *supra*, 171 Cal.App.4th at p. 1139.)  While Garcia challenges the giving of CALCRIM No. 370 only as it applies to the gang enhancement, our decision in *Fuentes* applies to the gang offense as well. (*Fuentes*, at p. 1139.)

CALCRIM No. 370 instructed the jury that the People were not required to prove any motive to commit the charged crimes.  Additionally, CALCRIM No. 1401 instructed on the former section 186.22, subdivision (b)(1) gang enhancement and provided that the People must prove Garcia intended to further gang activity.  These instructions correctly informed the jury that the People must prove Garcia "intended to further gang activity but need not show what motivated" him to do so.  (*Fuentes*, *supra*, 171 Cal.App.4th at pp. 1139–1140.)

### Section 190.2

Finally, with respect to Garcia's initial briefing, Garcia challenges the lying-in-wait special circumstance conviction he suffered under section 190.2.  Garcia contends that section 190.2, subdivision (a)(15) is unconstitutionally vague and overbroad, thus constituting cruel and unusual punishment under the Eighth Amendment because it fails to meaningfully distinguish lying-in-wait murder from other intentional killings.  Garcia

20.

recognizes that this argument was rejected by the California Supreme Court in *People v. Morales* (1989) 48 Cal.3d 527, 557. He argues, however, that *Morales* has been "severely criticized and cannot withstand careful examination," and thus should not be followed.

We do not agree. None of Garcia's citations show that *Morales*'s determination that the historical lying-in-wait special circumstance is constitutional has been discredited or overturned. Further, our Supreme Court again reviewed the enhancement in 2016, following amendments further tying the special circumstance to the underlying requirements of lying-in-wait murder. The court confirmed the enhancement was constitutional, explaining: "That a crime historically has been considered more reprehensible than other murders provides 'a rational basis for distinguishing those murderers who deserve to be considered for the death penalty from those who do not.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 637.) Garcia's argument is thus foreclosed by binding precedent.

### *Assembly Bill 333*

Garcia argues in supplemental briefing that Assembly Bill 333 should apply retroactively to his nonfinal case and that the modifications made by Assembly Bill 333 to the requirements for proving gang enhancements were not met by the prosecution in this case. Garcia additionally argues that even if the elements were arguably met, the change in the law is substantial enough that retrial is necessary so that counsel can prepare and defend against the new elements, which were not relevant at the time of his initial trial. The People agree that Assembly Bill 333 is retroactive. However, the People argue retrial is not necessary because the evidence adduced at trial met the new requirements of Assembly Bill 333.

We note at the outset our agreement with the parties' undisputed contention that Assembly Bill 333 is retroactive to nonfinal cases. Several courts have considered this issue and found retroactivity applicable. (See *People v. Lopez* (2021) 73 Cal.App.5th

21.

327, 344 (*Lopez*) ["As Assembly Bill 333 increases the threshold for conviction of the section 186.22 offense and the imposition of the enhancement, we agree with Lopez and the People that Lopez is entitled to the benefit of this change in the law."].)  We thus turn to whether a retrial is required given the new elements added to the law.

*Applicable Law*

Effective January 1, 2022, Assembly Bill 333 "amend[ed] section 186.22 to require proof of additional elements to establish a gang enhancement." (*Lopez*, *supra*, 73 Cal.App.5th at p. 343.)  In part, Assembly Bill 333 narrowed the definition of " ' "criminal street gang" ' " to " 'an[y] *ongoing, organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity.' " (*Lopez*, at p. 344, first bracketed insertion added, quoting § 186.22, subd. (f), as amended by Stats. 2021, ch. 699, § 3.)

In addition, Assembly Bill 333 changed the definition for a "pattern of criminal gang activity." (See § 186.22, subd. (a).)  At the time of Garcia's trial, this term was defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (Former § 186.22, subd. (e).)

Following the enactment of Assembly Bill 333, the definition has been amended as follows:  " 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of [] two or more of the following offenses [§ 186.22, subds. (A)–(Z)], provided at least one of these offenses occurred after the effective date of this chapter,

22.

and the last of those offenses occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed, the offenses were committed on separate occasions or by two or more members [of the gang], the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational …."  (§ 186.22, subd. (e)(1).)

Thus, to prove the "pattern of criminal gang activity," the prosecution must now adduce evidence showing:  (1) the last predicate offense occurred within three years of the currently charged offense; (2) the predicate offenses were committed by members of the gang who acted collectively; (3) the offenses commonly benefit a criminal street gang; and (4) that benefit is more than reputational.  Subdivision (g) of section 186.22 provides the following examples of a common benefit that is more than reputational: "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  By contrast, evidence of a reputational benefit would include an expert's opinion that the commission of a particular violent crime would elevate a gang member's reputation, which inures to the gang's benefit by instilling fear into the community and rival gang members.  (See, e.g., *People v. Albillar* (2010) 51 Cal.4th 47, 63.)

*Discussion*

The People readily concede that at least two of the four predicate offenses introduced in this case "arguably do not meet the new requirements."  However, the People contend that circumstantial evidence in the record allows this court to conclude that no reversible error arose because the remaining two predicate offenses would meet the new statutory requirements.  These two predicate offenses were (1) an assault by three Lamont 13 members on two individuals whom the prosecution showed were "Hispanic males" who were "from Arvin, but they were in Lamont at the time of the assault" and (2) a cell phone robbery and stabbing committed by four Lamont 13

23.

members. No additional information appears to have been disclosed about this later incident.

The People argue that these incidents meet the new requirements of Assembly Bill 333 based, in part, on the facts that the first offense occurred to protect gang turf "from perceived rivals" and the second occurred "for financial gain." We do not agree. First, reviewing the record, there is no witness testimony regarding the motivations for these crimes specifically. At best the record shows that the People's gang expert was asked about why gang members may commit murder. In response, the expert stated, "I know gang members commit violent crimes like assault with a deadly weapon, murders, shootings to enhance the gang member's individual reputation within the gang, and the gang's overall reputation within the community." Thus, other than the facts that the victims in the first offense were Hispanic and from Arvin—with no indication they were Arvin gang members—and in the second offense a cell phone was stolen, there is no indication in the record the offenses took place for any reason other than enhancing the gang's reputation. We find no basis to conclude these thin factual connections to asserted bases for the crimes are sufficient to show any error arising because the core elements of the offense changed after the trial occurred was harmless. The People simply had no reason to explore the motivations behind these offenses at trial and thus created a record that, as discussed above, satisfied the then current standards but failed to satisfy the new standards.

"We therefore conclude that the gang-related enhancement findings must be vacated and the matter remanded to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22." (*Lopez*, *supra*, 73 Cal.App.5th at p. 346.) Here, the imposition of the former section 186.22, subdivision (b)(1) and section 12022.53 enhancements were based on gang-related enhancements findings. (See § 12022.53, subd. (e)(1)(A).) Similarly, the section 186.22, subdivision (a) gang participation conviction and the section 190.2, subdivision (a)(22)

24.

enhancement were also based on gang-enhancement findings. We thus vacate these findings, noting the People may elect to retry them on remand.

## DISPOSITION

The judgment is reversed with respect to the enhancements and convictions under former section 186.22, subdivisions (a) and (b)(1) and sections 190.2, subdivision (a)(22), 12022.53, and 12022.7, subdivision (a). The judgment is affirmed in all other respects. The matter is remanded for further proceedings consistent with this opinion.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

DETJEN, J.